# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PNA Bank, f/k/a Alliance FSB, a Federally Chartered Savings Bank, | ) ) ) | Court of Cook County, Illinois, County Department, Chancery Division No. 2008 CH 25809 |
| Plaintiff, | ) ) | **Case No. 08 CV 4153** |
| v. | ) ) | Judge John F. Grady |
| Open Solutions, Inc. is a Delaware corporation, as successor in interest to BISYS, Inc., a Delaware corporation, | ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendant. | ) ) ) | |

## RESPONSE TO PLAINTIFF'S
## EMERGENCY MOTION TO REMAND TO THE CIRCUIT COURT OF COOK COUNTY PURSUANT TO FRCP 12(b)(1), OR IN THE ALTERNATIVE, EMERGENCY MOTION FOR MANDATORY INJUNCTION

Defendant Open Solutions Inc. ("Open Solutions"), by its attorney, Brandon L. Spurlock, submits its Response to Plaintiff's Emergency Motion to Remand to the Circuit Court of Cook County Pursuant to FRCP 12(b)(1), Or In The Alternative, Emergency Motion for Mandatory Injunction ("Plaintiff's Motion"), and states as follows:

### I.    INTRODUCTION

Like most contract disputes, this one is about money. Plaintiff PNA Bank ("Plaintiff" or "PNA Bank") wants Open Solutions to perform services pursuant to a contract, but it does not want to pay all monies due and owing, which the contract requires. This is not a case about irreparable harm to PNA Bank's business operations. This is a case about Plaintiff's refusal to pay. The total estimated amount due and owing is $170,854.38. PNA Bank, however, has only agreed to pay $26,258.42. Thus, the amount in controversy exceeds $75,000.

## II.    BACKGROUND

Open Solutions (successor in interest to BISYS) is a software company that provides software and data processing services to PNA Bank (successor in interest to Alliance FSB) pursuant to a March 18, 1999 Services Agreement ("Services Agreement"), Addendum, and 1st and 2nd Amendments thereto (collectively, the "Agreements").

In 1999, PNA Bank's data was converted into a format that allowed Open Solutions to provide data processing services under the Agreements.  On or about March 4, 2008, PNA Bank notified Open Solutions that it was not renewing the Agreements, which were scheduled to terminate on September 30, 2008.  PNA has informed Open Solutions that it is switching to another company for its data processing services.  On July 16, 2008, PNA Bank extended the termination date until November 17, 2008.  PNA Bank now demands that Open Solutions deliver a "first cut" of deconverted client files to PNA Bank by August 1, 2008.

According to the Services Agreement, before Open Solutions deconverts and delivers client files to PNA Bank, PNA Bank must pay Open Solutions: 1) fees for deconversion services; 2) any past due payments; and 3) any payments that will become due prior to termination. Specifically, Section 9(B) of the Services Agreement states:

> Client shall pay [Open Solutions] for Deconversion assistance in accordance with [Open Solutions] **_then current_** Deconversion rate schedule.   Payment for Deconversion together with all other payments which are due, and which will become due pursuant to the provisions of this Agreement shall be paid to [Open Solutions] **_prior to delivery of such client files._**

(*See* Plaintiff's Motion, Exhibit 2 ¶ 9(B)) (emphasis added.)

On July 22, 2008, Open Solutions Account Manager, Paul Stewart, sent a letter to Larry Chlum (PNA Bank's President) estimating that the total amount due prior to the deconversion and release of the client files is $170,854.38    A copy of Paul Stuart's July 22, 2008 letter is

attached hereto as Exhibit A. This amount includes standard deconversion fees (which may increase if client requests special services), telecommunication fees, past due and future invoices, arrears charges, and a software deposit. (*Id.* at Schedule A.) PNA Bank has offered to pay only $26,258.42, yet demands that Open Solutions immediately deconvert and deliver the client files. Again, the Services Agreement at Paragraph (B) could not be any clearer on this point: *"Payment for Deconversion together with all other payments which are due, and which will become due pursuant to the provisions of this Agreement shall be paid to [Open Solutions] prior to delivery of such client files."* A controversy, therefore, exists between the parties exceeding the $75,000 jurisdictional amount, and this Court has diversity jurisdiction, as the parties do not dispute that they are citizens of different states.

In exercising its jurisdiction, this Court should deny PNA Bank's request for a mandatory injunction because such relief is appropriate only if there is a likelihood of success on the merits coupled with irreparable harm. Here, there is an adequate monetary remedy that would resolve this dispute. PNA Bank could simply pay the full amount due, and then preserve its right to file a legal action for any disputed amounts. *See LTD Communications, Inc. v. Perederij*, 699 F.2d 404, 409 (7th Cir. 1983) (held that district court correctly denied preliminary injunction to plaintiff seeking data files from defendant where plaintiff could receive files by paying disputed amount and then assert legal claim against defendant).

In refusing to proceed along this reasonable path, as condoned by the Seventh Circuit, PNA Bank attempts to manufacture a case for irreparable harm. According to PNA Bank, its business operations would suffer significant disruption if it does not receive the client files as demanded. But there is a monetary cost attached to receiving the files; and it's not that PNA Bank cannot pay this amount, but that it refuses to pay. Thus, any alleged harm from not

receiving the client files is PNA Bank's fault, not Open Solutions; and there is no basis for claiming irreparable harm.

Furthermore, PNA Bank's entire case is based on the claim that the deconversion fees being charged in 2008 should be limited to prices from a 1996 price list. This argument does not hold water on the merits. Pursuant to the Addendum, the limit on price increases applies only to services selected from the 1996 price list *at the time of the contract*. PNA Bank did not select deconversion as one of its services at that time, though it had the opportunity to do so. Therefore, its argument that the deconversion fee should be limited to $26,258.42 has no chance of succeeding on the merits.

For these reasons alone, mandatory injunctive relief should be denied. But should this Court find it necessary to balance the hardships between the parties, the balance weighs against issuing a mandatory injunction because Open Solutions would be placed under unusual pressure to deconvert and deliver the files in such a short time frame. And, it would be less of a hardship for PNA Bank to pay the disputed amount and seek legal recourse, than it would be for Open Solutions to perform services (under pressure) prior to PNA Bank paying all monies due and owing, as is required under the Agreements.

## III.    ARGUMENT

### A. The Court Should Deny PNA Bank's Motion to Remand Because The $75,000 Jurisdictional Threshold Has Been Met.

The general federal rule is to decide the amount in controversy from the complaint itself. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 269 (2nd Cir. 2000). But where, as here, a complaint fails to set forth the necessary amount in controversy, the district court looks to the removal petition to determine if the jurisdictional amount is satisfied. *Id.* "In an equitable action, the amount in controversy is measured by the value of the object of the litigation."

*Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995); *see also Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1018 (7th Cir. 2004) (the cost to the defendant of complying with an injunction counts toward the jurisdictional minimum.)

In this case, PNA Bank has requested that Open Solutions deconvert and deliver its client files by August 1, 2008. Therefore, pursuant to the Services Agreement, payment for deconversion, and all other payments due or that will become due, must be paid prior to that date. The total estimated charges due prior to deconversion is $170,854.38. (*See* Exhibit A.) PNA Bank has agreed to pay only $26,258.42, yet demands the immediate deconversion and delivery of its client files. Therefore, the amount in controversy is at least $144,595.96, which far exceeds the $75,000 jurisdictional limit pursuant to 28 U.S.C. § 1332(a).[1] Thus, this Court should deny PNA Bank's Motion to Remand because there is complete diversity in this matter, as the jurisdictional amount is met and the parties agree that they are citizens of different states.

**B. This Court Should Deny PNA Bank's Request for Mandatory Injunctive Relief.**

PNA Bank cannot meet the burden for mandatory injunctive relief. To prevail on a motion for a mandatory injunction, the moving party must meet the threshold burden of establishing: 1) some likelihood of prevailing on the merits; and 2) that in the absence of the injunction, he will suffer irreparable harm, for which there is no adequate remedy at law. *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1453 (7th Cir. 1995). Because a mandatory injunction requires the court to command the defendant to take a particular action, "mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued." *Graham v. Medical Mutual of Ohio*, 130 F. 3d 293, 295 (7th Cir. 1997) *quoting Jordan v. Wolke*, 593 F.2d 772, 774

---

[1] Open Solutions acknowledges that although attorneys' fees recoverable pursuant to statute or contract can be added to the jurisdictional amount, the Seventh Circuit (unlike other jurisdictions) does not allow prospective attorneys' fees to be counted, but only those fees incurred prior to the filing of the state court complaint. *See Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998).

(7th Cir.1978); *see also W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir.1958) (finding that mandatory injunctions are rarely issued except upon the clearest equitable grounds). Only if the moving party establishes a likelihood of success on the merits and irreparable harm should a district court then balance the harms to the parties. *See Graham*, 130 F.3d at 295.

### 1. PNA Bank Has No Likelihood of Success on the Merits.

This Court should deny Plaintiff's Motion because PNA Bank has no likelihood of success on the merits. PNA Bank's entire argument rests on an inaccurate and tortured reading of the Services Agreement and Addendum. PNA Bank claims that the Addendum, in Paragraph 2.4, "specifically limits the increase in price for any services provided by Open Solutions to PNA Bank." (Plaintiff's Motion at 9.) Plaintiff thus claims that deconversion fees are based on the 1996 price list (minimum $20,000) with price increases tied to the U.S. Consumer Price Index. (*Id.* at 10.) However, "Services" is defined in Paragraph 1 of the Services Agreement as:

> services selected by Client from [Open Solutions] then applicable Standard Services Price List and/or Special Services Price list (collectively, the "Price Lists") (collectively, the "Services").

Therefore, "Services" are those services that were selected in March 1999, at the signing of the contract. Attached to the Addendum is Exhibit A, which lists the services selected by PNA Bank in March 1999 from the then applicable 1996 price list. Those services selected are the only services subject to the price increase limit in Paragraph 2.4 of the Addendum. PNA Bank did not select deconversion services at that time. Thus, contrary to PNA Bank's argument, deconversion services are not subject the price increase limit in Paragraph 2.4, and PNA Bank is required to pay the current deconversion rates. (*See* Exhibit A hereto for deconversion rate schedule.) PNA Bank would, therefore, never prevail on the argument that the price increases for deconversion

services is limited by the Addendum. Indeed, Open Solutions has negotiated with other clients to limit deconversion fee increases at the outset of a contractual relationship, and such language is clear and explicit in the contract. In this case, the contract clearly and explicitly *does not* limit the price increase for deconversion.

Thus, mandatory injunctive relief should be denied because PNA Bank is not likely to succeed on the merits.

### 2. PNA Bank Has No Irreparable Harm Because There Is An Adequate Legal Remedy.

Even if there was a likelihood of success on the merits (which there is not) PNA Bank allegations of irreparable harm are made from whole cloth. "Irreparable harm occurs only where the remedy at law is inadequate; that is, where monetary damages cannot adequately compensate the injury, or the injury cannot be measured by pecuniary standards." *Ajax Engineering v. Sentry Ins.*, 491 N.E.2d 947, 949 (Ill. App. Ct. 1986). "In order to establish irreparable injury to support a mandatory preliminary injunction, plaintiff must show his legal remedy is inadequate in that money damages will not be adequate compensation or damages escape pecuniary valuation." *Kessler v. Continental Casualty Co.*, 477 N.E.2d 1287, 1291 (Ill. App. Ct. 1985).

In this case, there is no irreparable harm, because money damages would be adequate to compensate PNA Bank for any alleged overpayment for deconversion services. Further, there is no disincentive to proceeding with a legal action, because the Addendum contains an attorneys' fees provision for the substantially prevailing party. PNA Bank, however, alleges irreparable harm via business interruption, lost profits, customers and goodwill if it does not receive the deconverted filed by August 1, 2008. But any such harm would be the direct consequence of withholding a disputed sum of money in violation of the Agreements. Taking this position, PNA Bank tries to manufacture irreparable harm that does not exist because PNA Bank could simply

pay the amount due and owing to receive its deconverted client files. And if PNA Bank believed it was overcharged in violation of the contract, it would have an adequate remedy at law (the dollar amount of the alleged overcharge), and the ability to pursue attorneys' fees. Therefore, as stated in the beginning, this is a case about money, and PNA Bank cannot establish irreparable harm because there is an adequate remedy at law.

PNA Bank relies heavily on *LTD Commodities, Inc. v. Perederij*, 699 F. 2d 404 (7th Cir. 1983) for its claim that "there are times when mandatory injunctive relief is necessary to maintain the status quo . . . when there is a potential business interruption with potentially significant damages." (Plaintiff's Motion at 7.) But *LTD Commodities* actually supports Open Solutions' position, not Plaintiff's. In *LTD Commodities*, there was a dispute about whether defendant had to turn over data files prior to receiving monies due. *Id*. at 407-08. Although district court Judge Shadur initially granted plaintiff's TRO, he denied plaintiff's motion for preliminary injunction determining that if plaintiff received its data files, and defendant was paid all amounts due and owing, plaintiff merely had "a law claim for dollars." *Id*. at 408. The Seventh Circuit upheld the district court's ruling that:

> [w]ithout this lawsuit [plaintiff] could have gotten its property on payment of the bill. It would then have had a claim against the defendants, if that bill was wrongful. That's the posture that would have happened before this lawsuit, and that's the posture in which the Court would leave the parties by the denial of the preliminary injunction.

*Id*. at 409.

*LTD Communications*, although relied upon heavily by PNA Bank, is actually on all fours with Open Solutions' argument – that upon full payment of its bill, PNA Bank will receive the deconverted files, and if the bill is wrong, then PNA Bank can pursue a legal claim for

money. Thus, PNA Bank's request for injunctive relief should be denied in accordance with *LTD Communications* because there is an adequate legal remedy.

### 3. The Balancing Of Hardships Weighs Against PNA Bank.

This Court should not have to balance hardships because PNA Bank cannot establish the prerequisites for injunctive relief. *See Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1453 (7th Cir. 1995) (only when the moving party establishes the likelihood of success on the merits and irreparable harm should a district court engage in balancing the harms to the parties). However, even if PNA Bank were able to clear these hurdles (it cannot) balancing the hardships weighs against issuing a mandatory injunction.

First, although PNA Bank extended its termination date to November 17, 2008, PNA Bank is demanding deconverted client files by August 1, 2008. This deadline is based solely on the claim that PNA Bank's new company needs the files by that date in order to compete the transition by November 17th. But there is nothing in the Agreements that would require Open Solutions to meet this arbitrary deadline, and requiring as much would create an undue burden on Open Solutions. Indeed, Open Solutions would need to pull employees from other projects to service PNA Bank's demands. And, at months' end, Open Solutions has numerous employees and resources dedicated to other tasks. Additionally, Open Solutions requires that PNA Bank and its new provider enter into a non-disclosure agreement prior to delivering deconverted client files because the process involves Open Solutions delivering proprietary information that will be used by one of its competitors.

Second, Open Solutions would be required to perform such tasks under pressure, and without being paid in full the amounts due and owing. Open Solutions would thus be

relinquishing the contractual right to be paid prior to deconverting and delivering client files, which is an important provision in the contract that was negotiated years ago.

Thus, when balanced against PNA Bank paying the disputed amount and then pursuing a legal claim, the hardship associated with forcing Open Solutions to divert resources to meet an arbitrary deadline without being paid monies due and owing under the Agreements weighs against issuing a mandatory injunction.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Open Solutions Inc. respectfully requests that this Court enter an Order:

1. Denying Plaintiff's Emergency Motion to Remand;

2. Denying Plaintiff's Emergency Motion for Mandatory Injunction;

3. Allowing Defendant twenty (20) days from the date of denying Plaintiff's Emergency Motions for Remand and Mandatory Injunction to respond to Plaintiff's Complaint; and

4. Granting any further relief deemed just and appropriate.

Respectfully submitted,

**OPEN SOLUTIONS INC.**

By: _____
   Brandon L. Spurlock
   LAW OFFICES OF BRANDON L. SPURLOCK, LLC
   225 West Washington Street, Suite 2200
   Chicago, Illinois 60606
   Tel (312) 924-0239
   Fax (312) 924-0201
   ARDC # 6278500

EXHIBIT   A



July 22, 2008

Mr. Larry Chlum
President
PNA Bank
4800 S. Pulaski Rd.
Chicago, IL 60632

**RE: Deconversion Charges Related to Services Agreement Number CHG-2779**

Dear Larry:

Pursuant to your letter dated        , we have begun the process of deconverting PNA Bank from the Open Solutions System as requested by the bank.  In preparation for your deconversion from the Open Solutions System scheduled for  November 17, 2008, we have estimated the final deconversion charges and monthly recurring charges through your deconversion date, using your June monthly invoice.  Please note that the final amounts are subject to change based upon your  processing volumes, any additional one-time, deconversion-related charges incurred and Monthly Invoices through the date of deconversion.

Open Solutions reserves the right to bill additional fees as they occur; such as, but not limited to, additional file fixes, year-end processing, postage, deconversion-specific projects, additional arrears fees, and other pass-through items.  **Please note, this is not a final bill.**  The following schedules are attached.

  ➢  Schedule A:  The total estimated charges due prior to deconversion are $170,854.38.

  ➢  Schedule B:  The Deconversion Fee is estimated to be $75,000.  The deconversion package includes:

   ▪  One (1) set of Test files of Client files in standard Open Solutions format;

   ▪  Two (2) sets of Live files in standard Open Solutions format;

   ▪  One (1) full Trial Balance for each application at Test and Live run;

   ▪  One (1) set of technical record layouts per application;

   ▪  Ten (10) hours of telephone consultation support on Open Solutions system/file formats.

  ➢  Schedule C:  Early Termination Charges are calculated in accordance with paragraph 3B to Services Agreement No. CHG-2779, dated  , and are estimated at $0.

**EXHIBIT A**

Page 2

➤ Schedule D:  Telecommunications related charges are listed.  Please note that all leased telecommunications equipment must be returned to Open Solutions no later than 60 days after the Network Disconnect date.  Note that Schedule D includes an amount representing a refundable deposit for leased telecommunications equipment, all or a portion of which may be used to offset any outstanding charges related to such equipment.

➤ Schedule F:  Past due invoices and other outstanding charges are itemized.

➤ Schedule H:  Special Deconversion Services charges are itemized.

Client acknowledges and agrees that Open Solutions shall have no obligation to release test files or live files until all fees due hereunder are paid in full.  Payment in full in the amount of $170,854.38 must be made by wire transfer in accordance with the following wire instructions no later than 12:00 Noon, November 12th, in order for Open Solutions to release the test files and/or live files.  All fees paid hereunder are non-refundable, except for the deposits on leased telecommunications equipment.

**Bank of America**
**Hartford, CT**
**For wire transfers via ACH:**
Account #003851490358
ABA #011900571
**For direct wire transfers (non-ACH):**
Account #003851490358
ABA #026009593
**Description:**  PNA Bank Deconversion

In addition to returning all leased equipment, you should also be prepared to send all software such as Teller, TIMS, and TFM to my attention within the week following deconversion to avoid further license fees and other additional charges.  All Telecommunications equipment should be returned per the instructions listed on Schedule D.

Page 3


Please sign below indicating your acknowledgement and acceptance of these terms. Please feel free to contact me if you have any questions regarding this arrangement. If you have any specific questions regarding the deconversion, please contact Jane Sidebotham at 800-767-5822, ext 4900.

Sincerely,



Paul Stuart

Enclosures

cc:

        ACCEPTED AND AGREED TO THIS ___ DAY OF _____, _____:


        _____
        By:
        Its:



## SCHEDULE A
## PNA Bank
## Totals
## July-2008

| | |
|---|---:|
| Deconversion Fee  (Schedule B) | $75,000.00 |
| Early Termination Fee (Schedule C) | $0.00 |
| Telecommunications Fee (Schedule D) | $10,614.38 |
| Digital Insight Fee (Schedule E) | TBD |
| Past Due and Future Invoices (Schedule F) | $50,800.00 |
| In Arrears Charges (Schedule G) | $4,340.00 |
| Special Deconversion Services (Schedule H) | TBD |
| EFT Deconversion Fee (Schedule I) | $18,100.00 |
| Software Deposit | $12,000.00 |
| TIMS/QM Software Retention - at Client's Request | TBD |
| Miscellaneous | TBD |
| **TOTAL DUE** | **$170,854.38** |



**SCHEDULE B**
**PNA Bank**
**Deconversion Fee**
**July-2008**

Deconversion Fee per 2008 Price List                                        $75,000.00

| Total Deconversion Fee | $75,000.00 |
|---|---|



## SCHEDULE C
## PNA Bank
## Early Termination Fee
## July-2008

| | | |
|---|---|---|
| Termination Date | | November 17, 2008 |
| Termination Notice Date | | May 15, 2008 |
| Contract Maturity | | September 30, 2008 |
| Months Remaining | 0 | Months |
| Early Termination Fee Calculation: | | 0 |

| | X | |
|---|---|---|
| | | $0.00 |

| Months Remaining | X | 0 |
|---|---|---|

| **Total Early Termination Fee:** | **$0.00** |
|---|---|



**SCHEDULE D**
**PNA Bank**
**Telecommunication Deconversion Fee**
**July-2008**

| | |
|---|---|
| CLIENT NAME / #: | Alliance Bank (2779) |
| DATE: | May 28, 2008 |
| ACCOUNT EXECUTIVE: | Paul Stuart |
| | |
| DECONVERSION DATE: | November 17, 2008 |
| NETWORK DISCONNECT DATE: | December 17, 2008 |

**Final Recurring Telecomm Fees:**

| | | |
|---|---|---|
| Final Month of Service | (11/1/08 thru 11/17/08) | $1,542.55 |
| Extended Network Connectivity (11/18/2008 thru 12/17/2008) | | $2,722.15 |
| 1 Month (Circuit Fees Only) Disconnect Interval | | $2,094.62 |
| 2 Months (Equipment Fees Only) Return Interval | | $1,255.06 |

$7,614.38

**Telecomm Equipment Deposit:**   *Subject to change based on extended connectivity requested by client.

$   3,000.00  **

**Customer must return equipment to Open Solutions at the below listed location by 2/17/2009 (60-Days after Network Disconnect date) in order to obtain equipment deposit refund. If equipment is not returned within 60-Days additional Recurring Equipment Fees of $627.53 mthly will be charged until equipment is received.

**Equipment to be Returned:**

(2) Vanguard 6455 Routers

Notes: Please label all equipment return boxes with RMA# provided above. Please package all equipment appropriately and with adequate packing material to prevent damage during shipping.

**TOTAL Telecom Deconversion Charges**

$10,614.38  ***

***Total Charges does not cover any network dial backup usage which are unpredictable and billed in arrears. These charges, if incurred after presentation of the final fees, will be deducted from customer's deposits and/or billed separately.

| Prepared By: | Rosie Medina |
|---|---|
| Date: | 5/28/2008 |



**SCHEDULE E**
**PNA Bank**
**Termination Fee**
**Digital Insight**
**July-2008**

Contract Start

Contract End

Current

Monthly Fees:

Average Fee

Average Fee X 80%

Remaining Months

| Total Digital Insight Termination Fee | TBD |
|---|---|

7/23/2008



**SCHEDULE F**
**PNA Bank**
**Past Due and Future Invoices**
**July-2008**

Estimated 10/31/2008 Invoice (List Price)                                    $25,400.00

**Estimated** 11/30/08 Invoice (List Price)                                    $25,400.00

| | |
|---|---|
| **Total Past Due and Future Invoices** | **$50,800.00** |



## SCHEDULE G
## PNA Bank
## In Arrears Charges
## July-2008

| | |
|---|---|
| Electronic Banking Services (November charges, usually billed in December) | $2,840.00 |
| Digital Insight (November charges, usually billed in December) | $1,500.00 |
| **Note:  Does not include Digital Insight Early Termination charges** | |
| Year End Processing (Not Applicable) | $0.00 |

| | |
|---|---|
| **Total In Arrears Charges** | **$4,340.00** |



### SCHEDULE H
### PNA Bank
### Special Deconversion Services
### July-2008

| Description | Quan | Per item | # items | Per item | Total |
|---|---|---|---|---|---|
| Electronic copybooks | 1 | $1,200 | | | |
| DDA fix: set cycle code to Live Decon date | 1 | $1,180 | | | |
| SV fix : set cycle code on savings | 1 | $1,000 | | | |
| Statements on CD's | | | | | |
| File fix IL Payment Mode | 1 | $1,000 | | | |
| IL credit bureau file fix | 1 | $1,000 | | | |
| ML credit bureau file fix | 1 | $1,000 | | | |
| ML history for Year 2007 | 1 | $1,000 | | | |
| IL history for Year 2007 | 1 | $1,000 | | | |
| SV history for Year 2007 | 1 | $1,000 | | | |
| Force post ACH warehouse | 1 | $10,000 | | | |
| Remove Tmatic Origination Flag (TS5106) | | $    150 | | | |
| Estimated subtotal | | | | | TBD |

Notes:

*Test files are delivered on the 2nd business day after the test date. If files are
requested for next day delivery, the mock deconversion charge applies.

Project manager - Consultation/Research over 5 hours  $250/hour

Programming Base Fee ($1,000- includes 1 hour) plus $.05 per item

Any special requests not listed above - special quote



# SCHEDULE I
## PNA Bank
## EFT Deconversion Fee
## July-2008

| | Qty | Item Cost | Total Charge |
|---|---|---|---|
| Deconversion Fee | 1 | $2,000.00 | $2,000.00 |
| Stand-In Processing Support | 3 | $3,500.00 | $10,500.00 |
| ACH Posting Stand-in Tape (3 Production, 1 Test) | 4 | $750.00 | $3,000.00 |
| Terminals Disconnect Fee | 2 | $550.00 | $1,100.00 |
| 6 Month Trailing Activity | 1 | $1,500.00 | $1,500.00 |
| **Total EFT Deconversion Fee** | | | **$18,100.00** |