## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PNA BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4153 |
| | ) | |
| OPEN SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court are the parties' cross-motions for summary judgment. We grant plaintiff's motion in part and deny it in part, and deny defendant's motion, for the reasons explained below.

### BACKGROUND

This diversity case arises out of a Services Agreement and Addendum, dated March 18, 1999 (the "Agreement"), between the parties' predecessors-in-interest.[1] (See Agreement, attached as Ex. B to Mem. of Law in Support of PNA Bank's Cross Mot. for Summ. J. (hereinafter "Pl. Mem.").) Pursuant to the Agreement, defendant Open Solutions, Inc. ("OSI") provided electronic data-processing software and related services to plaintiff PNA Bank ("PNA"). (Pl.'s Local Rule 56.1(a)(3) Stmt. of Material Facts for Which

---

[1] For ease of reference, we will refer throughout this opinion to the current parties, Open Solutions, Inc. and PNA Bank, and not their predecessors-in-interest.

There is No Genuine Issue (hereinafter, "Pl. Stmt."), ¶ 5.) On March 4, 2008, PNA notified OSI that it did not intend to extend the Agreement beyond its final renewal term. (Id. at ¶ 5.) At that time PNA also asked OSI to convert PNA's data "to a format other than" OSI's (so-called "deconversion") in order to transition to a new service provider, Metavante Corporation. (Id. at ¶ 7.) Regarding deconversion, the Agreement provides as follows:

> At Client's request as set forth in Paragraph 9(A), [OSI] shall deliver to Client all of the Client Files then retained by [OSI] including file layouts and their descriptions in [OSI] format and shall provide in accordance with [OSI] deconversion policies, reasonable and necessary assistance with the deconversion from the [OSI] System to a non-[OSI] system ("Deconversion"). Client shall pay [OSI] for Deconversion assistance in accordance with [OSI's] *then current Deconversion rate schedule*. Payment for Deconversion together with all other payments which are due, and which will become due pursuant to the provisions of this Agreement shall be paid to [OSI] *prior to delivery* of such Client Files.

(Agreement at ¶ 9(B) (emphasis added).) On July 22, 2008, OSI sent PNA a letter estimating the total amount due before OSI would deliver the deconverted data to PNA. (Def.'s Local Rule 56.1(a)(3) Stmt. of Material Facts for Which There is No Genuine Issue (hereinafter "Def. Stmt."), ¶ 6.) That figure, $170,854.38, included a $75,000 "Deconversion Fee" based upon OSI's 2005 price list. (Id.) PNA, relying on the 1996 price list that was current when the parties executed the Agreement, insisted that the deconversion fee was only $26,258.42. (Id. at ¶ 9.) OSI rejected PNA's calculation and refused to complete deconversion until PNA

paid the full amount that it believed PNA owed under the Agreement. (Pl. Stmt. ¶ 10.) Metavante, meanwhile, notified PNA that it needed a "first cut" of the deconverted data before August 1, 2008 or else it would be unable to commence service until March 2009. (Aff. of Richard J. Smies, attached as Ex. 8 to Pl.'s Emergency Mot. to Remand, or in the Alternative, Emergency Motion for Mandatory Injunction, ¶¶ 5-6.) With Metavante's deadline looming, PNA filed a two-count complaint in state court requesting specific performance (Count I) and a declaration that the amount of the deconversion fee was $26,258.42 (Count II). (Def. Stmt. ¶ 8.) After OSI removed the case to this court PNA moved for an injunction compelling OSI to provide the "first cut" of deconverted data to Metavante. (Id. at ¶ 13.) We granted PNA's injunction request and, as a condition of that relief, ordered PNA to pay OSI undisputed charges totaling $111,612.80 and to place in escrow the amount that remained in dispute ($59,241.58). (Order, dated July 30, 2008, at ¶¶ 4-5.) The parties complied with our order, but were unable to settle their dispute concerning the amount of the deconversion fee.

After hearing oral argument on October 8, 2008, we concluded that the 2005 price list was controlling because it was "current" when PNA selected deconversion services. (See Trans. of Proceedings, dated Oct. 8, 2008, attached as Ex. G. to Pl. Mem.,

at 30.) The 2005 price list calculates the deconversion fee as follows:

One-hundred percent (100%) of Average [sic] of last twelve (12) months charges, plus the average discount (if any) during the last twelve (12) months, plus any deconversion charges specific to particular services (minimum deconversion fee $75,000.00)

### Deconversion package includes:

-One (1) set of Test files of Client's files in standard [OSI] format
-Two (2) sets of Live files in standard [OSI] format
-One (1) Trial Balance for each Application at Test and Live
-One (1) set of Technical record layouts per Application
-Ten (10) hours of telephone consultation support

(Def. Stmt. ¶ 15.) The parties dispute whether the $75,000 minimum fee applies to additional deconversion services not listed under the heading "[d]econversion package," although the difference in dollars between their interpretations is not great. Not coincidentally, each party seeks its litigation costs and attorney's fees as the "substantially prevailing party" under the Agreement's fee-shifting provision. (Agreement ¶ 5.1.) We permitted PNA to amend its complaint to reflect its interpretation of the 2005 price list and invited the parties to file cross-motions for summary judgment. Those motions are now before us.

## DISCUSSION

### A. Legal Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c). "The evidence in the record must be viewed in the light
most favorable to the nonmoving party, and on cross-motions for
summary judgment, inferences are drawn in favor of the party
against whom the motion under consideration was made." McKinney
v. Cadleway Properties, Inc., 548 F.3d 496, 500 (7th Cir. 2008)
(internal citation omitted). "Summary judgment should be denied if
the dispute is 'genuine:' 'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998)
(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986)). The court will enter summary judgment against a party who
does not "come forward with evidence that would reasonably permit
the finder of fact to find in [its] favor on a material question."
McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

## B. The Deconversion Fee

OSI contends that it is entitled to $75,000 for the services
identified in the 2005 price list under the heading "[d]econversion
package." Any additional deconversion services are separate and
charged in addition to the $75,000 "deconversion fee." Plaintiff
contends that defendant is entitled to the greater of $75,000 or
the amount calculated using the price-list formula, *including*
charges for additional deconversion services. OSI raises several

objections unrelated to the merits of PNA's interpretation, which we discuss below.

    *1. Whether PNA should be deemed to admit that OSI's interpretation is correct.*

We agree with OSI that plaintiff ought to have filed a response to OSI's Local Rule 56.1 statement, but we will not deem plaintiff to have admitted that OSI's interpretation of the price list is correct. See Williams v. Cano, No. 06-C-6065, 2008 WL 4367417, *2 (N.D. Ill. Mar. 27, 2008) ("While it is within the court's discretion to strictly apply the requirements of Local Rule 56.1, it is also within the court's discretion not to apply them strictly or literally."). The key statement in OSI's Local Rule 56.1 submission is the amount it contends PNA currently "owes" for deconversion based on OSI's interpretation of the 2005 price list. (See Def. Stmt. at 21 ("PNA Bank currently owes Open Solutions a balance of $55,461.43 for the deconversion services.") This is essentially a legal argument — it presupposes that defendant's price-list interpretation is correct — and not a proper statement of fact. See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."); see also Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("It is inappropriate to allege legal conclusions in a 56.1(a) statement on the off-chance that one's opponent might not

file a correct response."). In this instance, PNA's noncompliance did no harm to the rule's purpose. See Hill v. Village Of Crete, No. 07 C 3112, 2008 WL 4559859, *1 ("The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments."). Accordingly, we will not deem it to have admitted that defendant has stated the correct amount owed for deconversion services.

  2.  *Whether PNA has properly supported its interpretation, or refuted OSI's, with admissible evidence.*

Next, defendant argues that plaintiff has not produced any evidence rebutting the affidavit of Paul Stuart, an OSI employee, which sets forth (among other things) defendant's interpretation of the price list. (See Stuart Aff. ¶ 4 ("Pursuant to Open Solutions' 2005 Price List, the $75,000 minimum deconversion fee is in addition to any deconversion charges specific to particular services."). Defendant emphasizes that the price list, unlike the Agreement, was not negotiated. Because OSI drafted the price list, OSI seems to imply that the price list means whatever OSI says it means. This argument gives OSI more than it bargained for. The parties intended that PNA would pay the amount dictated by the "then current" price list, not whatever amount OSI decided to charge when PNA requested deconversion. See Norman Sec. Systems, Inc. v. Monitor Dynamics, Inc., 740 F.Supp. 1364, 1368 n.3 (N.D. Ill. 1990) ("[I]t is an established principle of contract law that

parties may incorporate other writings by reference into a written
contract."). Neither party contends that the price list is
ambiguous, and Mr. Stuart's affidavit does not *create* an ambiguity.
See Murphy v. Keystone Steel & Wire Co., 61 F.3d 560, 564
("[S]ubjective and self-serving testimony" cannot be used to create
an ambiguity in a contract that is otherwise clear on its face.).
Therefore, there is no basis to admit extrinsic evidence purporting
to show that the price list does not mean what it says. See Air
Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill.
1999) (A contract "speaks for itself, and the intention with which
it was executed must be determined from the language used.")
(citation and quotation marks omitted).

3. *Whether this court previously adopted OSI's interpretation.*

Defendant also contends that we have already ruled in its
favor, relying on statements we made at the October 8, 2008 oral
argument. At that hearing we first ascertained defendant's
position with respect to the deconversion fee. (Trans. of
Proceedings, dated Oct. 8, 2008, at 17-18.) Then, we summarized
our ruling:

> So I am quite clear that the meaning of the contract is
> that plaintiff is liable to the defendant for the
> deconversion service charges applicable under its price
> list of 2005, which was the one that it was using in
> 2008. It was the then-current price list for
> deconversion. That has a minimum of $75,000, *plus
> apparently everybody agrees there will be additional
> charges with the particular deconversion.*

(Id. at 30 (emphasis added).) We believed, incorrectly, that the parties agreed what the 2005 price list meant, but the statement that OSI relies on did not appear in our order and was not necessary to our decision. (See Order, dated Oct. 8, 2008, at 1 ("After hearing oral argument on the question of contract interpretation, the court rules from the bench, as a matter of law, that the terms of the contract between the parties permit the defendant to charge the plaintiff a minimum fee of $75,000.00 for deconversion services."). PNA did not object when we characterized its position, but it plausibly argues it did not believe that we were addressing the question that is now before us. Plaintiff does not dispute that the 2005 price list contains a $75,000 minimum fee, or that there are "additional charges with the particular deconversion." It challenges defendant's method of aggregating those charges. The safer and more efficient course, under the circumstances, would have been for plaintiff to assert its interpretation of the 2005 price list in the alternative. But we do not believe that PNA, by its silence at the hearing, waived its current argument.

Turning finally to the price list's language, defendant argues that the "minimum fee" covers only the "minimum services" listed under the heading "[d]econversion package." (Def. Reply at 6.) The problem with this interpretation is that it does not adequately account for the phrase "plus any deconversion charges specific to

particular services." The price list indicates that those charges,
plus the twelve months average charges and discounts, are part of
the total "deconversion fee" and subject to the $75,000 minimum.
Otherwise, the parenthetical phrase "(minimum deconversion fee
$75,000)" would appear after the phrase "plus the average discount
(if any) during the last twelve (12) months," not at the end of the
formula. Defendant claims that the price list's final sentence,
concerning charges for additional "file adjustments, option
changes, and special requests," undercuts this interpretation. We
disagree. That sentence merely indicates that such additional
services will be charged "in accordance with [OSI's] deconversion
price schedule then in effect;" it says nothing about charging the
client for those services in addition to the $75,000 "minimum
deconversion fee." Applying the price-list's plain language,
defendant is entitled to the greater of $75,000 and the figure
calculated using the price list's formula, including charges for
services not included in the basic "[d]econversion package."[2]

The price list does not tell us which particular charges are
"deconversion charges specific to particular services," and neither
do the parties. PNA's July 29, 2008 letter purports to allocate to

---

[2] OSI also insists that this interpretation "makes no sense" because it
gives the PNA something for "free" — PNA would have paid the same amount
($75,000) if it had not requested any additional services. (Def. Reply at 3.)
It does not cost the plaintiff anything *more* to request additional services, at
least until those charges — plus the 12 months average charges and discounts —
exceed $75,000, but those services are not "free." Defendant just makes a lower
profit margin on those services. In any event, this is the result that the price
list's plain language dictates.

specific charges the $111,612.80 we ordered it to pay to OSI (e.g., "Deconversion Fee - $26,258.42," "EFT Deconversion Fee - $2,000.00," etc.). Those line items only partly correspond to OSI's earlier estimate of the total charges and to OSI's "final estimate," which OSI calculated after this lawsuit was already underway. (Neither party acknowledges the discrepancy.) We infer from PNA's memorandum that the following charges are for "recurring services" and not deconversion: (1) "past due and future invoices;" (2) "in arrears charges;" and (3) "refundable deposits." Using defendant's final estimate, these charges total $70,140.00.[3] We also infer from plaintiff's memorandum that the following are deconversion charges: (1) the "telecommunications fee" (less the $3,000 "Telcomm Equipment Deposit"); (2) "special deconversion services;" (3) the "EFT deconversion fee;" and (4) a "second set of test files." These charges total $32,434.23, again using defendant's final estimate. Using this figure, plaintiff calculates the total deconversion fee as follows:

Average of last twelve months charges:          $13,124.95

Average discount:                                $3,321.78

Deconversion charges specific to

---

[3] OSI's $10,614.38 "telecommunications fee" includes a $3,000.00 "Telcomm Equipment Deposit" refundable if PNA returns certain equipment to OSI by February 17, 2009. (See Letter dated July 22, 2008, attached as Ex. E to Pl.'s Mem., at Schedule D; see also Stuart Aff. ¶ 6 (final telecommunications fee).) We have followed PNA in separating the deposit from the telecommunications fee as that appears more consistent with the parties' intentions given our interpretation of the price list.

particular services:                                    $32,434.23

Total deconversion fee:                                 $48,880.96.

Defendant has not challenged any of the figures in plaintiff's calculation, so we conclude that this is the correct deconversion fee applying the formula as we have interpreted it. Because the deconversion charges do not exceed $75,000, defendant is entitled to the minimum fee. The deconversion fee, together with charges unrelated to deconversion, total $145,140.00. Plaintiff has already paid defendant $111,612.80 (on July 29, 2008) and $10,500.00 (on October 9, 2008), leaving $23,027.20 outstanding. OSI is entitled to be paid that amount from the monies currently being held in escrow. PNA is entitled to the balance.

## C. The "Refundable Deposits"

PNA also asks us to order OSI to pay PNA $15,000.00 "in refundable deposits." (Pl. Mem. at 15.) The telecommunications-deposit refund is conditioned on PNA returning certain equipment to OSI before a certain date. There is no indication in the record whether PNA has complied with that precondition. With respect to the software deposit, it is not clear why OSI charged that fee or whether it is, in fact, refundable. PNA's request is denied because it has not articulated any grounds justifying the relief it has requested.

## D. Costs and Reasonable Attorney's Fees

Each party requests its "litigation/collection costs" and reasonable attorney's fees pursuant to section 5.1 of the Addendum, which provides in pertinent part:

> Notwithstanding anything to the contrary contained in the Agreement, the substantially prevailing party shall be entitled to recover its litigation/collection costs and reasonable attorney's fees.

Neither party makes a reasoned argument or cites relevant precedent supporting its claim. Cf. United States v. McLee, 436 F.3d 751, 760 (7th Cir. 2006) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation and internal quotation marks omitted); Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."). The parties' perfunctory requests are especially puzzling because we specifically invited them to research the matter. (Trans. of Proceedings, dated Oct. 8, 2008, at 35-36 ("[S]ubstantially prevailing party . . . may be a term of art that has received some interpretation by the courts. Take a look.").) Our own research persuades us that neither party is entitled to costs and attorney's fees given the outcome of this case.

Our Court of Appeals recently construed a contract provision similar to section 5.1 in Tax Track Systems Corp. v. New Investor World, Inc., 478 F.3d 783 (7th Cir. 2007). Although the Court was unable to find any Illinois case law construing the phrase

"*substantially* prevailing party," the Court noted that Illinois courts interpreting the phrase "prevailing party" incorporate a substantiality requirement. Id. at 789. So, the Court saw "little distinction" between the two phrases. Id. Under Illinois law, "[a] party can be considered to be a 'prevailing party' for the purposes of a fee-shifting provision when it is successful on any significant issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or when it achieves an affirmative recovery." Med + Plus Neck & Back Pain Ctr., S.C. v. Noffsinger, 726 N.E.2d 687, 694 (Ill. App. 2000). A prevailing party "need not win on all claims, nor must a 'substantially' prevailing party — to prevail 'substantially' does not mean 'totally.'" Tax Track, 478 F.3d at 789 (internal citation omitted). On the other hand, we may deny fees and costs if both parties prevail on "significant issues in the action," or if neither party prevails. See Med + Plus Neck & Back Pain Ctr., 726 N.E.2d at 861 (upholding the trial court's ruling that the parties were responsible for their own costs and fees because "both parties were successful on significant issues in the action"); R.J. Management Co. v. SRLB Development Corp., 806 N.E.2d 1074, 1086 (Ill. App. 2004) (similar); Raffel v. Medallion Kitchens of Minnesota, Inc., 139 F.3d 1142, 1147 (7th Cir. 1998) (concluding that neither party had prevailed on balance and upholding the

district court's decision not to award attorney's fees). In other words, we may declare a "draw." Raffel, 139 F.3d at 1147.

Here, plaintiff sought and received an injunction compelling the defendant to turn over the "first cut" of deconverted data to Metavante. Plaintiff's victory, although not on the merits, did constitute success on a "significant issue in the action." Med + Plus, 726 N.E.2d at 694. As a condition of that relief we ordered PNA to pay OSI $111,612.80. True, plaintiff admitted at oral argument — apparently for the first time — that it did not dispute those charges. But that does not alter the fact that OSI received "some benefit," and an "affirmative recovery," in this case. Id.; see also River East Plaza v. Variable Annuity Life Ins. Co., No. 03 C 4354, 2008 WL 623617, *4 (N.D. Ill. Mar. 4, 2008) (concluding that a plaintiff who received a voluntary refund from the defendant was a "prevailing party" under Illinois law). After oral argument on October 8, 2008 we ruled that the deconversion fee should be calculated using OSI's 2005 price list. This was a significant victory for the defendant on the merits of plaintiff's original claim. (See Original Compl. at 7 (requesting a declaration that the deconversion fee was $26,258.42 based upon OSI's 1996 price list).) Today we have ruled that PNA's interpretation of the price-list is correct, in effect cutting its losses after we ruled against it on the question of which price list governed. The net effect of our rulings is that PNA has received the deconverted data

for less than OSI sought to charge, but more than it was initially willing to pay. We conclude that the result of the litigation is a "draw." Raffel, 139 F.3d at 1143 ("Sometimes in litigation, neither side wins."). There are, perhaps, other ways to parse the outcome of the case, but neither party persuades us (or even attempts to persuade us) that it has won "substantially" more than it has lost. Therefore, we deny both parties' requests for costs and attorney's fees.

## CONCLUSION

Plaintiff's cross-motion for summary judgment (23) is granted in part and denied in part. Defendant's motion for summary judgment (18) is denied. By separate order, judgment will be entered in favor of plaintiff and against defendant in the amount of $36,214.22, representing the difference between the monies held in escrow and the amount still owed by plaintiff under the Agreement. The Clerk of the Court will be directed to pay defendant the balance of the escrow account. Both parties' requests for costs and attorney's fees are denied, and plaintiff's request for $15,000 "in refundable deposits" is denied. We believe that this resolves all pending matters and that the case is now closed.

- 17 -

DATE:          January 20, 2009

ENTER:

John F. Grady, United States District Judge